Smith, J.
As to the fit st point, the case of Powell v. Travilia is conclusive, decided in this c^ou in April, 1>J04.
As to the second point, he was of opinion, that under the rule of court, the arbitrators were empowered c> take cognusance of, and determine the right and title of the land in question. That the objection to tl)e arbitration of disputes which involve the titles of the parties do freehold estates being bottomed on'feudal principles, which are not recognized in oür law, is not well founded. Whatever may be the rule in England, where the Feudal principle is allowed to operate, on this point, n'o.such rule ought to prevail here as that which has been contended for, because no reason for it exists here. Because it is a matter of record, the award being under the sanction of an order of court; and after the award is accepted and con. firmed by the court, it becomes a judgment of the court. He was for granting, the motion on both grounds.
Brevard, J.
With respect to the first question raised in this «ase, I am bound to consider it as settled by the determination in the case of Travella and Powell at this place in April, 1804, in which four judges agreed, that an award by a majority of the arbitrators mutually chosen by the parties, shall be good, provided they ■all meet and confer together, on the matters submitted, although there be no express provision in the submission to guard against a difference of opinion. The rule established by this decision, may not' entirely agree with the rule which obtains on the same point in England. It is said to be the rule there, that unless it be expressly provided in the submission that a less npmder than all the arbitrators may make the award, the eoncurrence of all is necessary. Kyd on Aw. 67. But I dó not know that we are absolutely bound by En. glish rules of construction or practice, although we acknowledge, and are bound by the English rules of law which have been adopted by ■us. The question here is not about a principle, or positive rule of law, but relates to the construction of an agreement, or a rule of prac--iices. In support of the construction we have adopted, and the rule we have established, we may refer to the Roman law, by which "the judgment of a majority of the arbitrators is deemed sufficient to .satisfy the terms of submission, without any express provision to an-..thorize it. It seems to be the intent of the submission by the tacit .agreement of the parties in all cases, when no express agreement to •,the contrary is made, where the arbitrators chosen consist of an odd aumber above two, that the award of a majority shall be obligatory *382 and conclusive. Kyd on Aw. 66. And at all events, it is better to adhere to a rule once deliberately established, although incorrect, for *be sake of certainty and uniformity, unless mischief, or great inconvenience should arise from it, or it should be absurd or contrary t° some clear principle of law, or principles of reason or policy, than by departing therefrom, introduce all those evils which inevitably flow from fluctuating and uncertain rules of legal adjudication.
With respect to the second point, it seems to have been long ago adjudged in England, that the right or title to freehold estate in lands cannot be a subject of arbitrament. There is a great deal of subtilty, and not a little absurdity and confusion in the old cases on this subject. Even where the submission was by deed, it was holden that the arbitrators were not authorized to meddle with the title to land. The title to a freehold estate was holden not to be a subject of reference. Yet the arbitrators were deemed competent to award a conveyance of the freehold; to award that one party should enfeoff the other, and deliver up charters. Kyd, 35. A release might be awarded ; but it was still holden, that an award could not change the estate, nor determine the right. 1 Roll. 14, á42. 1 Ld. Ray. 115. The difficulty seems to have been how to enforce such awards; for the method we pursue of converting awards into judgments of court, is a modern invention of our courts, never practiced in England. Both Judge Blackstone, and Mr. Kyd, are of opinion that the perplexities to be met with in the ancient cases on this point, grew out of the restraints imposed by the feudal principles then in operation, upon the alienation of real property. 2 Bl. Com. Kyd on AW. 37.
By the Roman law, it seems, real property might be a subject of arbitration. Kyd, 38. On general principles of law, I can see no sufficient reason, why the right and title to a freehold estate should not be determined on arbitration as well as any other matter in controversy between parlies in litigation or contention; but in order to operate a transfer of the estate, or establish the right of property, and title, in either party, where both claim the estate, and it is uncertain which has the better title, it seems to be necessary, by the statute of frauds, 29 Car. 2 c. 3, that the submission should be by deed, or note in writing, signed by the parties making the same.
The case of Morris and al. v. Rosser, cited for the plaintiff, from 3 East. 15, was a case in ejectment, in which the defendant was not allowed to go into evidence of his title, because he had refused to comply with an award in another action of ejectment for part of the same premises, which were leasehold, and not freehold. In that *383 case the matter in dispute was not concerning a freehold estate. r ^ Moreover, it appears that the submission was by deed ; and it is presumable the award was also by deed. Therefore, for any thing that appears, the statute of frauds was fully complied with. Besides, it is expressly stated by the court in its decision in that case, that the award was not to have the effeet of conveying the land, or the estate therein, but only to preclude the defendant from disputing the title of the lessor in that ejectment.
In the principal case now under consideration, the submission was by parol. The reference, by rule of court, cannot, in my opinion, be considered as such a solemn and deliberate act of the parties, as to amount to, or be regarded as an agreement, or contract, by record. Besides, the object and intent of the reference is not fully, or explicitly, set forth in the rule or order of court. The nature and objects of the submission, in order to have the effect contended for on the part of the plaintiff, ought, at any rate, to have been defined, and not left uncertain, and to be explained by parol evidence. An ignorant, or careless man, might very easily be drawn in, from haste, or inadvertency, to compromit very important interests, in a reference of this sort, where no such consequence was apprehended, or thought of.
In addition to all this, the statute of frauds, in my opinion, stands in the way of such a submission. The submission which is to op. erate a change of estate, or title to land, “ must be in writing, signed by the parties making the same.” And so ought the award to be. The award, in this case, is not stated to have been in writing, signed by the agents of the parties, the arbitrators, which is also a requisite by the statute to affect the estate iff question. But this is not material, unless the submission had been conformable to the statute. But if the objection, founded on the statute of frauds, could be surmounted, I should still be at a loss to see how the award could, in a case like this, be enforced. I have strong doubts of the propriety, and legality, of rendering judgments in court upon awards of arbitrators upder rules of court; especially, if either party should object thereto. Judgments of court, it seems to me, should be founded on evidence submitted, or supposed to be submitted, to the consider, ation of the court, under circumstances which afford to the parties a hearing according to the rules and principles of law ; and not upon the report, or recommendation, of private persons, though judges of the parties’ own choosing. I am, at no time, disposed to discourage arbitrations. On the contrary, I am always disposed to give them every encouragement, which may consist with the *384 principles of law, and sound policy, for. I do think that this mode set,lir'g disputed claims, and quarrels, in general, not only much cheaper, but, iri many other respects, better than by litigation in court. But still, I cannot be reconciled to the practice of convert» mg awards into judgments of court, in the short handed way which is usual in our courts; because I have not been able to discover any authority to sanction it. Awards are never enforced, in this man» ner, in England. There, the remedy for non-compliance with an award, is either by action on the award, or on the bond, conditioned to submit and abide the award of arbitrators ; or, if the submission be by rule of court, by attachment for contempt, as in other cases where a consent rule has been entered into.
In the case cited from 3 East., in order to enforce a compliance with an award where the parties had submitted by bond, the court would not allow the contumacious party to give evidence of his title in another aciiou of ejectment, tlie subject of which was connected with the subject of the award. The practice of referring cases to ar« bitration, under a rule of court, is founded on the stat. 9 and 10 Wm. 3, which is not made of force in this State. The practice, however, is said to have existed prior to the statute. Vid. Sid. 54. Ld. Raytn. 35. 1 Salk. 72. And that its great utility, occasioned the statute to be enacted, which has extended the remedy ; and that by entering into a rule of reference, and consenting that it shall be, as it were, an order of court, the parties, in effect, bind themselves to consent to the court’s awarding judgment on the award. Still, however, I cannot avoid considering the practice as an innovation, which could not be made by the courts without the assumption of legislative power. And even admitting the efficacy, and propriety, of judgments on awards, made in pursuance of rules of court in relation to personal actions, it does not seem to follow, that similar judgments, in relation to actions which have for their object the right and title to lands, are to be considered legal and proper, and sufficient to determine and establish the right. If this should be the case, such judgments would have the effect of legal conveyances, or deeds of estoppel, which might be attended with many unseen mis. chiefs, and inconveniences. The titles, by which landed estates are holden, ought not, in my judgment, to be too easily overset, or shaken. The English law wisely guards against the mischiefs which might ensue from hasty and incompetent transfers, or alien-ations of real property. The statute of frauds was purposely intended to protect the landed proprietor from unguarded or pretended transfers. And though, in that country, lands may be aliened by *385 taatter of record, by fine and common recovery ; yet these instru-meats are solemn and formal conveyances, made and entered into with the consent of parties, and with the sanction of a court of record. And even these conveyances' might be falsified at any distance of time at common law, till the doctrine of nonclaim was es. tablished by statute. 2 Bl. Com, 301.. My opinion is, that the motion should be rejected, on the second ground.
■Bay, J., said he had not been made acquainted with the terms of the rule of court, so as to know what was the matter submitted 5 but from the argument, he took it for granted, the right to the freehold was meant to be submitted. He was'of opinion the freehold could not be determined by arbitration. The freehold is a fixed, permanent property ; not like personal property, or choses in ac. tion, which are transitory and uncertain. The -policy of the law will not permit real rights to be'destroyéd, or disturbed, by extrajudicial judgments. It would produce confusion, and uncertainty. He cited many authorities in support of his opinion, and agreed entirely with Brevard, J., on the second point- As to the first point, be differed from the rest of the court. He considered the case of Travilla'and Powell, as a hasty and erroneous decision, which ought to be overruled, and was for rejecting the motion on both grounds,
Waties, J., regretted that the opinion now delivered would leave the law unsettled. As to the first point, he concurred with Stami, and Brevard, Justices. Upon the second point he reasoned with great force, to prove that the doctrine held by Brevard, and Bay, was unfounded, unless upon principles which are not by as considered as entitled to respect, or at all in force. That while we draw copiously from the great and excellent fountains of the common law, we should be careful not to dip up its impurities. That though it could not perhaps be clearly ascertained, when awards were first converted into judgments of court in this country, yet he could say, that the practice had existed for. up wards of twenty years. He inclined to think it originated prior to the revolution. That the decisions of domestic tribunals were, generally speaking, equitable and just, and were entitled to every encouragement in the power of the courts to give them. That the rule of English law was void of reason, and out to be exploded, or rather rejected, for it never had been adopted in this country. But if it had, we ought to get rid of it. That it was high time wé had emancipated the coun. iiy from the fetters and judicial tyranny of the feudal law. It was of as much importance to us, as our political emancipation from the ■ *386 tyr&my ^ie crown* Rg was of opinion, the judgments on awards might well be entered up on the record, and execution be issued on them. He was in favor of granting the motion, on both grounds.
Note. Authorities referred on the first point, Kyd. on Aw, 66, 67. Co. Litt, Cro. Eliz. 80. Barnes, 57. On the second point, 3 East. Rep. 15, Morris v. Rosser. 1 Roll. Abr.,242. 1 Com. Dig. Tit. Arbitrament,let. D. 3. Peake's Evid. 75 Ambl. 245. Str. 301. Bl. Com.
Where there was a parol submission to five persons, it was held that all of them must join in the award. Where an artthority is confided to several persons for a prívale purpose, all must join in the act; aliter, in matters of public concern. 6 Johns. 39, Green v. Miller. 1 Bos. and P. 236. 3 T. R. 592. Cro. J. 100, 278. Barnes, 57. Willes, 215.
The court being equally divided, the plaintiff took nothing by his motion.